IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

THE HANOVER INSURANCE CO.,        )
                                  )
        Plaintiff,                )
                                  )
v.                                )    Civil Action No. 1:10-cv-1231
                                  )
JETT MECHANICAL, INC., et al.,    )
                                  )
        Defendants.               )
                                  )

## MEMORANDUM OPINION

This matter comes before the Court on Plaintiff's Motion for Summary Judgment.

Plaintiff The Hanover Insurance Company is a corporation existing under the laws of New Hampshire with its principal place of business in Massachusetts. Defendant Jett Mechanical, Inc. ("Jett Mechanical") is a Virginia corporation. Defendants David Jett, Kristine Jett, Robert Jett, and Carol Jett are citizens of the Commonwealth of Virginia.

Plaintiff filed a Complaint on October 29, 2010 alleging that all Defendants agreed to indemnify Plaintiff pursuant to an Agreement of Indemnity, that Jett Mechanical is obliged to indemnify Plaintiff under a theory of common law indemnity, and that Jett Mechanical breached a Settlement Agreement. Defendants failed to answer Plaintiff's discovery requests,

which led the Court to grant Plaintiff's Motion for Sanctions and to prohibit all Defendants from introducing any witnesses or documents into evidence.

The Complaint alleges that on May 24, 2005 all Defendants executed an Agreement of Indemnity ("Agreement") in favor of Plaintiff in partial consideration for Plaintiff's issuance of surety bonds on behalf of Jett Mechanical.  The Agreement provides that:

> The Indemnitors shall exonerate, indemnify, and save harmless the Surety from and against every claim, demand, liability, cost, charge, suit, judgment and expense which the Surety may pay or incur, including, but not limited to, loss, interest, court costs and consultant and attorney fees:
> (a)  by having executed or procured the execution of the bonds; or
> (b)  in making an independent investigation of any claim, demand, or suit; or
> (c)  in defending any suit, action, mediation, arbitration or any other proceeding to obtain release from liability whether the Surety, in its sole discretion, elects to employ its own attorney or permits or requires Indemnitors to defend the Surety; or
> (d)  in enforcing any of the covenants, terms and conditions of this Agreement.

The Agreement also sets forth when the Indemnitors are to make payment to Plaintiff and endows Plaintiff with the exclusive right to adjust, settle, or compromise claims made against Plaintiff's bonds:

> Payment shall be made to the Surety by the Indemnitors as soon as liability exists or is asserted against the Surety, whether or not the Surety shall have made any

payment therefor.   Such payment to the Surety shall be: a) if the amount asserted as a claim, demand or suit is an ascertainable or liquidated amount, the amount of the claim, demand, or suit asserted against the bond or bonds by any claimant or obligee, plus the amount the Surety deems sufficient, in its sole discretion, to indemnify and hold it harmless from and against any loss, cost, interest, and expense necessary to defend, investigate, or adjust the claim, demand, or suit; or b) if the amount asserted as a claim, demand, or suit is an unascertainable or unliquidated amount, the amount the Surety deems sufficient, in its sole discretion, to indemnify and hold it harmless from and against any loss, cost, interest and expense necessary to defend, investigate, or adjust the claim, demand or suit. . . .

The Surety shall have the exclusive right to adjust, settle, or compromise any claim, demand, suit or any other proceeding arising out of any bond against the Surety and/or the Indemnitors, take whatever action it deems appropriate in response thereto, and its determination of whether to defend or settle the same shall be binding and conclusive upon the Indemnitors. In the event of any payment or disbursement by the Surety, the Indemnitors agree to immediately reimburse the surety for any and all payments and disbursements made (including, but not limited to, interest from the date of the Surety's payments at the maximum rate allowable) under the Surety's belief that liability for the payments existed or that payment was necessary or expedient, whether or not such liability, necessity or expediency existed.   Vouchers or other evidence of payment by the Surety shall be conclusive evidence of the fact and amount of such liability, necessity, or expediency and of the Indemnitors' liability to the Surety                              therefor.

Plaintiff issued a subcontract payment bond and subcontract performance bond on June 29, 2007 on behalf of Jett Mechanical, as principal, with Eagle General Contracting, LLC, as obligee, in connection with a subcontract for work to be performed at

Washington Dulles International Airport ("Dulles Project").  The
payment bond issued on behalf of Jett Mechanical for the Dulles
Project was for the benefit of subcontractors and suppliers that
provided labor and material used or required for performance of
the subcontract.  Siemens Industry, Inc. ("Siemens") provided
goods and materials to Jett Mechanical for use in the Dulles
Project.  A dispute arose between Siemens and Jett Mechanical,
resulting in Siemens submitting a claim and filing suit against
Plaintiff for judgment in the amount of Seventy-Eight Thousand
Two Hundred Eighty Dollars ($78,280.00).  On May 4, 2010, Jett
Mechanical executed a Settlement Agreement and Mutual Release
("Settlement Agreement") in which it acknowledged its debt and
agreed to pay Siemens Seventy-Eight Thousand Two Hundred Eighty
Dollars ($78,280.00).  Subsequent to the execution of the
Settlement Agreement, Jett Mechanical failed or refused to make
any such payments.  As a result of Jett Mechanical's failure to
pay, Plaintiff entered into a Settlement Agreement with Siemens
on June 29, 2010 pursuant to which Plaintiff paid Siemens
Seventy-Eight Thousand Two Hundred Eighty Dollars ($78,280.00)
in exchange for a full release.

On May 2, 2007, Plaintiff issued a subcontract payment bond
and a subcontract performance bond on behalf of Jett Mechanical,
as principal, with TMG Construction Corporation, as obligee, in

4

connection with a subcontract for work to be performed at Ronald

Reagan National Airport ("National Project"). Siemens provided

goods and materials to Jett Mechanical for use in the National

Project. A dispute arose between Siemens and Jett Mechanical,

resulting in Siemens submitting a separate claim and filing suit

against Plaintiff seeking judgment in the amount of One Hundred

Sixteen Thousand Two Hundred Seventeen Dollars ($116,217.00).

Plaintiff investigated and defended against Siemens' claim by

asserting a notice defense. Siemens ultimately agreed to

dismiss its complaint against Plaintiff, but Plaintiff incurred

attorneys' fees and expenses in defending against the suit.

On September 3, 2009, Plaintiff issued a Labor and Material

Payment Bond on behalf of Jett Mechanical, as principal, with

Metropolitan Washington Airports Authority, as obligee, in

connection with a contract for renovation of the East Domestic

Water Pump Station at Dulles International Airport ("Water Pump

Project"). On December 3, 2010, Natelco Corporation ("Natelco")

filed a complaint against Plaintiff alleging that it had

provided electrical work to Jett Mechanical on the Water Pump

Project and that Jett Mechanical failed to pay Natelco Thirty-

Two Thousand Nine Hundred Sixty Dollars ($32,960.00). Jett

Mechanical disagreed with the amount allegedly owed, so

Plaintiff offered to set up a meeting between David Jett and a

Natelco representative. On May 4, 2011, David Jett informed Plaintiff that he had met with a representative of Natelco and that they had agreed upon an amount due of Twenty Thousand Eight Hundred Fifteen Dollars ($20,815.00). Plaintiff informed all Defendants that if they did not pay Natelco the amount due by May 17, 2011, then Plaintiff would pay the outstanding debt. On May 18, 2011, Plaintiff paid Natelco the amount of $20,815.00 in exchange for a full release of Natelco's claim against Plaintiff's payment bond concerning the Water Pump Project.

Plaintiff's total payments to Siemens and Natelco total Ninety-Nine Thousand Ninety-Five Dollars ($99,095.00). Additionally, Plaintiff incurred attorneys' fees, costs, and expenses in the amount of Thirty-Eight Thousand Eight Hundred Seventy-Eight Dollars and Five Cents ($38,878.05) by investigating and defending against the three payment claims and lawsuits asserted against Plaintiff's payment bonds.

The Court will grant summary judgment when there is no genuine dispute as to any material fact and judgment as a matter of law is appropriate. Fed. R. Civ. P. 56. After the moving party has made the necessary showing through pleadings, affidavits, depositions, or other documents, the nonmoving party must present evidence that shows that genuine and material factual issues exist. Austin v. Clark Equip. Co., 48 F.3d 833,

835 (4th Cir. 1995).  Plaintiff has demonstrated that there are no material facts in dispute and that it is entitled to judgment as a matter of law.

The Defendants are obligated to indemnify Plaintiff for all its losses, costs, and expenses pursuant to the Agreement of Indemnity.  When a surety discharges a principal's obligations pursuant to an express indemnification contract, the surety is entitled to rely on the indemnification contract to enforce its rights.  Fid. & Deposit Co. of Md. v. Bristol Steel & Iron Works, Inc., 722 F.2d 1160, 1163 (4th Cir. 1983).  Courts have repeatedly upheld contractual indemnity provisions.  E.g., Bell BCI Co. v. Old Dominion Demolition Corp., 294 F. Supp. 2d 807, 812 (E.D. Va. 2003).

The Agreement of Indemnity between Plaintiff and Defendants is unambiguous and must be applied in accordance with the plain meaning of its terms.  The Agreement contains broad provisions that require Defendants to exonerate and indemnify Plaintiff, as the Surety, from every claim, demand, liability, cost, charge, suit, judgment and expense that the Surety may have incurred from its issuance of payment bonds.  The Agreement also requires that payment be made to Plaintiff as soon as liability exists or is asserted against Plaintiff.

7

In the Settlement Agreement executed by David Jett, Jett
Mechanical acknowledged that it owed $78,280 to Siemens for work
that Siemens performed on the Dulles Project.  The Settlement
Agreement also provided that the entire balance of the
settlement sum would be immediately due and owing upon any
failure by Jett Mechanical to make any required payment timely
and in full.  On June 14, 2010, Jett Mechanical's attorney
informed Plaintiff's attorney that (1) Jett Mechanical had
failed to make the second settlement payment owed to Siemens,
(2) Jett Mechanical owed $78,280 to Siemens for the Dulles
Project, and (3) there were no defenses to Siemens' claim for
the Dulles Project.  As a result, Plaintiff discharged the
$78,280 debt owed to Siemens on behalf of Jett Mechanical
pursuant to the terms of the Settlement Agreement.  Under the
terms of the Agreement of Indemnity, the Defendants are
obligated to indemnify Plaintiff for the losses Plaintiff
incurred by paying Siemens on behalf of Jett Mechanical.

Similarly, Jett Mechanical admitted that it owed money to
Natelco.  David Jett met with a representative of Natelco and
agreed on an amount due in the amount of $20,815 from Jett
Mechanical to Natelco.  When Jett Mechanical failed to pay
Natelco, Plaintiff made the payment on behalf of Jett
Mechanical.  According to the terms of the Agreement of

8

Indemnity, the Defendants must indemnify Plaintiff for the losses incurred in paying Natelco on behalf of Jett Mechanical.

Indemnity agreements are generally interpreted to entitle the surety to recover fees, costs, and expenses incurred to enforce the agreement. E.g., Rappold v. Ind. Lumbermens Mut. Ins. Co., 431 S.E.2d 302, 304-05 (Va. 1993); see also Atl. Contracting & Material Co. v. Ulico Cas. Co., 844 A.2d 460, 477-78 (Md. 2004). The Agreement of Indemnity between Jett Mechanical and Plaintiff expressly provides for the Indemnitors to pay Plaintiff, as Surety, for court costs and attorney fees, among other expenses. Accordingly, Defendants must indemnify Plaintiff for Plaintiff's attorney fees and costs expended in paying the debts and pursuing indemnification if such fees are reasonable. Plaintiff attached two affidavits to its Memorandum in Support of its Motion for Summary Judgment in which attorney Eric Korphage affirms that the attorneys' fees and costs incurred by Plaintiff are fair and reasonable and attorney Timothy R. Hughes affirms that the attorneys' hourly rates and the number of hours expended were reasonable. The Court finds that the number of hours and rates charged by Plaintiff's counsel are reasonable. Defendants shall pay Thirty-Six Thousand Five Hundred Twenty-One Dollars and Five Cents ($36,521.05) to Plaintiff for attorneys' fees and costs,

9

representing the amount of fees and costs incurred less the amount billed and disposed of in regard to Plaintiff's Motion for Sanctions.

Because the Court is according full relief to Plaintiff by granting summary judgment on Count I of the Complaint, the Court need not address summary judgment in regard to Counts II or III of the Complaint.

Plaintiff's Motion for Summary Judgment should be GRANTED as to Count I of the Complaint and judgment entered in favor of Plaintiff in the amount of One Hundred Thirty-Five Thousand Six Hundred Sixteen Dollars and Five Cents ($135,616.05).

An appropriate Order shall issue.

_____/s/_____
Claude M. Hilton
United States District Judge

Alexandria, Virginia
August  24 , 2011

10